```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
SARA MARTINEZ,                                  :
                Plaintiff,                      :     MEMORANDUM ORDER
        -v.-                                    :
                                                      15 Civ. 515 (ALC) (GWG)
                                                :
NEW YORK CITY HEALTH AND HOSPITALS
CORPORATION et al.,                             :
                Defendants.                     :
---------------------------------------------------------------x
```

GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE

In an Order to Show Cause issued on August 8, 2017 (Docket # 165) ("Order to Show Cause"), this Court ordered defendants Dyntek Services, Inc., and Dyntek, Inc. (collectively, "Dyntek"), and their former counsel, Lea Spiess, Esq., to show cause why each should not be sanctioned for their failure to respond to plaintiff Sara Martinez's discovery requests and to obey numerous Court orders. Dyntek and plaintiff submitted a number of papers in response.[1] Spiess did not respond to the Order to Show Cause. For the reasons stated below, we conclude that Spiess's conduct warrants sanctions and that Dyntek's conduct does not.

---

[1] Defendants Dyntek, Inc. and Dyntek Services, Inc.'s Memorandum in Response to Court's Order to Show Cause, filed Sept. 19, 2017 (Docket # 191) ("Def. Mem."); Letter from Laurie E. Morrison, dated Sept. 26, 2017 (Docket # 196); Letter from Laurie E. Morrison, filed Sept. 26, 2017 (Docket # 197); Defendant Dyntek, Inc. and Dyntek Services, Inc.'s Reply Memorandum, filed Sept. 28, 2017 (Docket # 199); Letter from Laurie E. Morrison, dated Nov. 13, 2017 (Docket # 205) ("Supp. Fees Letter"); Letter from Karla Kraft, dated Nov. 20, 2017 (Docket # 206); Letter from Laurie E. Morrison, dated Dec. 6, 2017 (Docket # 210); Letter from Laurie E. Morrison, dated Dec. 18, 2017 (Docket # 218); Letter from Travis P. Brennan, dated Dec. 19, 2017 (Docket # 220).

I. BACKGROUND

We will not review in detail the conduct that led to the issuance of the Order to Show Cause as it was set forth in the original Order to Show Cause as well as a previous order of the Court. See Order, filed July 25, 2017 (Docket # 160). In brief, Dyntek failed to respond to Martinez's interrogatories and document requests for at least six months preceding a June 5, 2017 status conference. At the conference, Spiess admitted that she had not responded to Martinez's discovery requests. See Transcript, filed July 13, 2017 (Docket # 155), 28. The Court set a new deadline to respond of June 9, 2017. Id. 30; see also Amended Scheduling Order, filed June 6, 2017 (Docket # 149).

On July 5, 2017, Martinez filed a letter stating that Dyntek "still [has] not responded to Plaintiff's First Set of Interrogatories and Document Requests, in direct violation of Your Honor's Order, dated June 5, 2017." See Letter from Laurie E. Morrison, dated July 5, 2017 (Docket # 150). Spiess responded on July 10, 2017, claiming that she had mailed the outstanding discovery to Martinez's counsel on June 20, 2017, by disc, because the files were too large to email. See Letter from Lea Spiess, dated July 10, 2017 (Docket # 152). Martinez's counsel responded that she had not received any discovery responses from Dyntek by email or in any other form. See Letter from Laurie E. Morrison, dated July 13, 2017 (Docket # 153).

The Court issued an Order directing Spiess to either email her responses to Morrison, breaking the documents down into separate emails if necessary, or to hand-deliver a disc containing the responses, by noon on July 14, 2017, and to call Morrison on that day to confirm receipt. Order, filed July 13, 2017 (Docket # 154). Morrison then filed two letters stating that Spiess had not complied with the Court's order other than to send Morrison a single email with seven pages attached. See Letter from Laurie E. Morrison, dated July 14, 2017 (Docket # 158);

Letter from Laurie E. Morrison, dated July 17, 2017 (Docket # 159) ("Morrison July 17 Letter"). While Morrison did not state what was on these seven pages, it appeared from the letters that they were not the responses and objections to the discovery requests. See Order, filed July 25, 2017 (Docket # 160), at 2. The transmission of only seven pages was also inconsistent with Spiess's previous claim that the responsive materials were "too large to send via e-mail." Id. Spiess never responded to Morrison's letters. Id.

On July 25, 2017, the Court ordered Spiess and "an officer of Dyntek with the most knowledge of this topic" to file sworn statements describing in detail what Dyntek and counsel had done to comply with the Court's Orders of June 5 and July 13, 2017. See id. The Court also required that either Dyntek or Spiess attach "all discovery responses that Dyntek claims to have previously transmitted to plaintiff," and required that all filings be made by August 1, 2017. Id. at 2-3.

No filings were made on that date. Accordingly, on August 2, 2017, a law clerk called Spiess to inquire about this failure. Later that day, Spiess filed a letter requesting an extension to August 4, 2017, which the Court granted. See Order, filed Aug. 2, 2017 (Docket # 163). Dyntek and Spiess failed to comply with that deadline either. Accordingly, the Court ordered them both to show cause, in writing, by August 15, 2017, for why each should not be sanctioned for their failure to respond to Martinez's discovery requests and to obey the Court's orders. See Order to Show Cause. Spiess and Dyntek made no filing by that date.

On August 21, 2017, the Court scheduled a hearing on the Order to Show Cause for August 28, 2017, and ordered the President or Chief Executive Officer of Dyntek to attend. Order, filed Aug. 21, 2017 (Docket # 169). Spiess was also directed to file an affidavit by August 22, 2017, "indicating that she has personally confirmed with the President or CEO of

3

[Dyntek], that he or she must attend this hearing." Spiess filed an affirmation on August 23, 2017 (Docket # 172), stating that she had "personally informed the President and Chief Executive Officer of [Dyntek] that his presence is required at the hearing."

Spiess appeared alone and 15 minutes late to the August 28 hearing. Order, filed Aug. 28, 2017 (Docket # 174). When asked why her client, whom she identified as Ron Ben-Yishay, was absent, Spiess did not provide an adequate explanation. Id. Consequently, the Court adjourned the proceeding until August 31. Id. In a written Order confirming oral orders given at the hearing, the Court ordered Spiess and "a representative from the New York offices of Dyntek with the most information concerning this litigation" to attend the next hearing in person. Id. Ben-Yishay was allowed to attend via telephone. Id. In addition, the Court ordered Ben-Yishay to file an affidavit by August 29, 2017, explaining why he failed to comply with the Court's August 21 Order. Id.

No filings were made by that date. Accordingly, on August 30, 2017, a law clerk called Spiess to confirm that no affidavit had been submitted. See Order, dated Aug. 30, 2017 (Docket # 177). After failing to reach her and finding her voicemail inbox full, the law clerk telephoned Ben-Yishay to ask whether he had received a copy of the August 28 Order. Id. Ben-Yishay said he had not seen the Order, and provided an email address to which the law clerk could email the Order. Id.; see also Declaration of Ron Ben-Yishay, dated Sept. 19, 2017 (annexed as Ex. 1 to Def. Mem.) ("Ben-Yishay Decl."), ¶ 7. The law clerk subsequently emailed the Order to Ben-Yishay, along with prior Orders. Ben-Yishay Decl. ¶ 7.

Spiess did not appear at the August 31, 2017 hearing. See Declaration of Adam LaChant, dated Sept. 19, 2017 (annexed as Ex. 3 to Def. Mem.) ("LaChant Decl."), ¶ 6. Ben-Yishay, however, appeared by telephone, and Dyntek Senior Account Executive Adam LaChant

4

appeared in person. Ben-Yishay Decl. ¶ 9; LaChant Decl. ¶ 6. After the Court explained to Ben-Yishay the full scope of Dyntek's counsel's actions in this case, Ben-Yishay stated that he had been unaware of Spiess's conduct. See Transcript, filed Sept. 7, 2017 (Docket # 182) ("Tr."), 3-10. Ben-Yishay requested and the Court granted a week for Dyntek to obtain new counsel. Id. at 13.

Dyntek timely obtained new counsel, see Notices of Appearance, dated Sept. 7, 2017 (Docket ## 184, 185), following which the parties responded to the Order to Show Cause. In their response the Dyntek Chief Executive Officer, Ron Ben-Yishay, indicated that he hired Spiess because she had been counsel on a previous litigation that was successfully resolved. Ben-Yishay Decl. ¶ 3. His Chief Operating Officer, Karen Rosenberger, and a Senior Account Executive, Adam LaChant, were to be in charge of interactions with Spiess. Id. ¶ 4. Ben-Yishay did not have knowledge of Spiess's discovery failures and failures to obey court orders in June and July 2017 (let alone earlier) and was not properly informed of the Court's order regarding his appearance in court on August 23, 2017, or the requirement that he submit an affidavit. Id. ¶¶ 5, 8, 10. Ben-Yishay terminated Spiess the same day he learned of the Court's orders, which was August 31, 2017. Id. ¶ 9. Rosenberger and LaChant were similarly unaware of the Court's orders, the plaintiff's motions to compel, or Spiess's failure to comply with discovery obligations. See Declaration of Karen Rosenberger, dated Sept. 19, 2017 (annexed as Ex. 2 to Def. Mem.); LaChant Decl.

## II. GOVERNING LEGAL STANDARDS

The Order to Show Cause directed the parties to explain why each should not be sanctioned pursuant to "Fed. R. Civ. P. 16(f), Fed. R. Civ. P. 37(b), Fed. R. Civ. P. 37(d), 28 U.S.C. § 1927 (as to Spiess only), the Court's contempt powers, and/or the inherent powers of

5

the Court." Order to Show Cause. Having reviewed the responses, the Court in its discretion will rely solely on Rule 16(f) as it supports a sufficient sanction.

Rule 16(f) of the Federal Rules of Civil Procedure authorizes a court "[o]n motion or on its own," to issue "any just orders" if a party or its attorney "fails to appear at a scheduling or other pretrial conference; is substantially unprepared to participate — or does not participate in good faith — in the conference; or fails to obey a scheduling or other pretrial order." Fed. R. Civ. P. 16(f)(1). Subpart (2) states that

> instead of or in addition to any other sanction, the court must order the party, its attorney, or both to pay the reasonable expenses — including attorney's fees — incurred because of any noncompliance with this rule, unless the noncompliance was substantially justified or other circumstances make an award of expenses unjust.

Id.

A district court "has wide discretion in imposing sanctions." World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp., 694 F.3d 155, 159 (2d Cir. 2012) (internal quotation marks omitted). In considering sanctions under Rule 16(f), courts have considered the factors applied in cases arising under Rule 37(b). See, e.g., Cohen v. U.S. Dep't of Justice, 2017 WL 149987, at *2 (S.D.N.Y. Jan. 13, 2017); Martin v. Giordano, 2016 WL 4411401, at *15 (E.D.N.Y. Aug. 18, 2016). These factors are:

> (1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance, and (4) whether the non-compliant party had been warned of the consequences of noncompliance.

S. New England Tel. Co. v. Global NAPs Inc., 624 F.3d 123, 144 (2d Cir. 2010) (citation and internal quotation marks omitted).

"The purpose of the sanctions is three-fold: (1) to ensure that a party will not benefit from its own failure to comply; (2) to obtain compliance with the particular order issued; and (3)

to serve as a general deterrent effect on the case and on other litigants as well." Fonar Corp. v. Magnetic Plus, Inc., 175 F.R.D. 53, 56 (S.D.N.Y. 1997).

III. LIABILITY FOR SANCTIONS

   A. Spiess

Spiess's conduct in representing Dyntek violated Rule 16(f). Spiess failed to obey numerous court orders starting in June 2017 and has provided no credible explanation for her conduct (and more often no explanation at all). Indeed, she provided no response to the Court's Order requiring her to show cause why she should not be sanctioned. Most recently, she violated the Court's Order of August 28, 2017 (Docket # 174), by failing to appear at the August 31, 2017, hearing herself and by failing to inform Ben-Yishay of the existence of the August 28 Order. In addition, Spiess misled the Court on numerous occasions regarding the reasons why she failed to comply with Orders. See Order to Show Cause. As a result of Spiess's conduct, discovery was delayed at least eight months and Spiess wasted a significant amount of this Court's and the parties' time during court proceedings. Because Spiess has declined to explain her behavior, we conclude that Spiess's conduct was wilful.

Spiess's conduct merits sanctions. See, e.g., Petrish v. JP Morgan Chase, 789 F. Supp. 2d 437, 455 (S.D.N.Y. 2011) (sanctioning party for failure to comply with numerous scheduling and pretrial orders); Fonar, 175 F.R.D. at 56 (sanctioning party for failing to supplement pretrial order as ordered by court); Barsoumian v. Szozda, 108 F.R.D. 426, 426 (S.D.N.Y. 1985) (attorney sanctioned for failure to appear at pretrial conference); Lutwin v. City of New York, 106 F.R.D. 502, 503-04 (S.D.N.Y. 1985) (imposing sanctions under Rule 16(f) for failure to file answer by deadline set in scheduling order). While we recognize that we have the power to impose a disciplinary sanction in the form of a fine, see, e.g., Grenion v. Farmers Ins. Exch.,

7

2014 WL 1284635, at *9 (E.D.N.Y. Mar. 14, 2014), Rule 16(f)(2) permits a court to award attorney's fees "[i]nstead of" another sanction. Because Spiess's non-compliance with court orders caused plaintiff's counsel to spend significant time addressing Spiess's conduct, we find that a sanction that amounts to an award of reasonable attorney's fees is sufficiently large to fulfill the purposes of Rule 16(f) without the need for an additional disciplinary sanction.

Rule 16(f)(2) provides that an award of attorney's fees should not be made if the noncompliance was "substantially justified or other circumstances make an award of expenses unjust." By not responding to the Court's Order to Show Cause, Spiess has left this Court with no basis for making any such findings. Therefore, the Court awards to Martinez reasonable attorney's fees incurred as a result of Spiess's conduct.

B. Dyntek

Although we find that Spiess failed to comply with court orders with full knowledge of their requirements, a different set of considerations applies to Dyntek.

"The rule that the sins of the lawyer are visited on the client does not apply in the context of sanctions." Gallop v. Cheney, 660 F.3d 580, 584 (2d Cir. 2011) (per curiam) (quoting In re Porto, 645 F.3d 1294, 1304 (11th Cir. 2011)), vacated in part, 667 F.3d 226 (2d Cir. 2012). "In deciding on the suitability of lesser sanctions, and whether the sanctions should be aimed primarily against the party or the attorney, it can be important for the district court to assess the relative roles of attorney and client in causing the delay, as well as whether a tactical benefit was sought by the [misconduct]." World Wide Polymers, 694 F.3d at 159 (internal quotation marks omitted) (alterations in original) (quoting Dodson v. Runyon, 86 F.3d 37, 40 (2d Cir. 1996)). Thus, "[w]hen an attorney's misconduct or failing does not involve an attempt to place the other side at an unfair disadvantage, any sanction should ordinarily be directed against the attorney

rather than the party, absent strong justification." Id. at 160; see also Ransmeier v. Mariani, 718 F.3d 64, 71 (2d Cir. 2012) ("[W]e recognize that attorneys often have considerable latitude in the exercise of their professional judgment to design litigation strategies to achieve those goals. A client should not be punished when an attorney, without the client's approval, exercises that responsibility unwisely.").

Here, Dyntek has submitted uncontested evidence that it was unaware of Spiess's conduct until the August 31, 2017 hearing. See Tr. 9-10; Ben-Yishay Decl. ¶¶ 7-8; LaChant Decl. ¶ 7. While it would have been better if someone at Dyntek had monitored Spiess more closely, we cannot say that Dyntek acted unreasonably in trusting that an admitted attorney would take full responsibility for complying with court orders and other obligations and in trusting that the attorney would at least inform it if a court was complaining about the party's conduct. See, e.g., Gallop, 660 F.3d at 583-84 (finding client not culpable for attorney misconduct where she "did not spearhead her litigation strategy"); cf. Ransmier, 718 F.3d at 71 (holding "a veteran of federal court litigation" responsible for the egregious conduct of her attorney where "she worked closely with [him]") (internal quotation marks and citation omitted). Here, Dyntek promptly addressed the matter once it learned of Spiess's behavior.

Additionally, there is no evidence that Dyntek gained any advantage from Spiess's conduct. See World Wide Polymers, 694 F.3d at 159 (directing district courts to assess "whether a tactical benefit was sought by the [misconduct]") (alteration in original). There is no reason to believe that any documents or witness testimony have been lost or made unavailable because of the delay. Since learning of its failure to respond to document requests, Dyntek has produced responsive documents and is attempting to proceed expeditiously with discovery. See Declaration of Karla Kraft, dated Sept. 19, 2017 (annexed as Ex. 4 to Def. Mem.) ("Kraft

9

Decl."), ¶ 8. Absent evidence that Martinez was materially disadvantaged by the discovery delays, the Court cannot conclude under these circumstances that it would be just to sanction Dyntek. See, e.g., Nolan v. Primagency, Inc., 344 F. App'x 693, 694 (2d Cir. 2009) (summary order) (declining to sanction client where "[t]here is no evidence of a tactical benefit to the client . . . , and there is nothing in the record to suggest that the client contributed to the delays"); Barney v. Consol. Edison Co. of N.Y., 2007 WL 952035, at *5-6 (E.D.N.Y. Mar. 28, 2007) ("it appears that the delays were caused principally, if not solely, by plaintiff's attorney and prejudice to the defendant can be alleviated by the imposition of lesser sanctions"); Daniels v. Loizzo, 175 F.R.D. 459, 462 (S.D.N.Y. 1996) (declining to dismiss plaintiff's case in part because "Defendants have alleged no prejudice resulting from the delay. However, [assuming prejudice], the fact that the delay appears to have ended with Plaintiff's retention of new counsel militates against dismissal.").

IV. CALCULATION OF ATTORNEY'S FEES AWARD

Martinez seeks attorney's fees in the amount of $14,195. See Revised Invoice, dated Sept. 26, 2017 (attached as Ex. 1 to Letter from Laurie E. Morrison, filed Sept. 26, 2017 (Docket # 197)) ("Revised Invoice"). The only attorney on the case is Laurie E. Morrison. Courts have used the traditional "lodestar" analysis in calculating fees under Rule 16(f), see, e.g., Attard v. City of N.Y., 2008 WL 1991107, at *5 (E.D.N.Y. May 5, 2008), and we will do so here. That analysis is described in depth in the case of Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany, 522 F.3d 182, 190 (2d Cir. 2008), and will not be repeated. Essentially, the lodestar or "presumptively reasonable fee" consists of "'what a reasonable, paying client would be willing to pay,' given that such a party wishes 'to spend the minimum necessary to litigate the case effectively.'" Simmons v. N.Y.C. Transit Auth., 575 F.3d 170, 174 (2d Cir. 2009) (quoting

Arbor Hill, 493 F.3d at 112, 118). It consists of a reasonable hourly rate multiplied by the number of hours reasonably expended. Id. at 174.

   A. Reasonable Hourly Rate

The rate to be set for Martinez's attorneys must be "in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Reiter v. MTA N.Y.C. Transit Auth., 457 F.3d 224, 232 (2d Cir. 2006) (alteration in original) (internal quotation marks omitted) (quoting Blum v. Stenson, 465 U.S. 886, 896 n.11 (1984)). Because the fee applicant bears the burden of establishing the reasonableness of the hourly rates requested, it is incumbent upon the applicant to "produce satisfactory evidence . . . that the requested rates are in line with those prevailing in the community . . . ." Blum, 465 U.S. at 896 n. 11; accord Ortiz v. City of N.Y., 2016 WL 4532983, at *3 (S.D.N.Y. July 15, 2016). "The size of the firm may also be considered as a factor in determining the hourly rate, 'primarily due to varying overhead costs.'" Robinson v. City of N.Y., 2009 WL 3109846, at *4 (S.D.N.Y. Sept. 29, 2009) (quoting Cioffi v. N.Y. Cmty. Bank, 465 F. Supp. 2d 202, 219 (E.D.N.Y. 2006)).

Martinez requests an hourly rate of $425 for Morrison. See Supp. Fees Letter at 1. Morrison, according to her letter, is a solo practitioner of employment discrimination law with approximately 15 years' experience as a lawyer. Id. She has 12 years' experience in the field of employment law, with the last eight spent as a solo practitioner. Id. Morrison has not provided any evidence (e.g., a retainer agreement) of a rate that she has actually commanded in the marketplace.

We have considered Morrison's submissions and find that we agree with Judge Francis that "[t]he rate of $350.00 per hour . . . is reasonable for the principal of a small firm in this

11

district." Chen v. Arts Nail Putnam Valley, Inc., 2015 WL 2381033, at *1 (S.D.N.Y. May 13, 2015); accord Changzing Li v. Kai Xiang Dong, 2017 WL 892611, at *19 (S.D.N.Y. Mar. 7, 2017) ($350 hourly rate reasonable for solo practitioner of employment law with approximately 13 years' experience); Custodio v. Am. Chain Link & Constr., Inc., 2014 WL 116147, at *6 (S.D.N.Y. Jan. 13, 2014) ($300 hourly rate reasonable for solo practitioner with more than 10 years' experience in employment and labor law); Kadden v. VisuaLex, LLC, 2012 WL 6097656, at *2 (S.D.N.Y. Dec. 6, 2012) ($375 hourly is reasonable for solo practitioner with 25 years' experience in labor and employment law litigation); see also Townsend v. Benjamin Enters., Inc., 679 F.3d 41, 59 (2d Cir. 2012) (affirming award of $350 hourly to civil rights attorney from small law firm). Additionally, the issues involved in litigating the instant discovery motions and motions for sanctions were not particularly difficult or novel. Accordingly, we find that an hourly rate of $350 is appropriate.[1]

B. Hours Reasonably Expended

In evaluating whether Martinez's attorney's total claimed hours were reasonably expended, a court considers "not whether hindsight vindicates an attorney's time expenditures, but whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." Grant v. Martinez, 973 F.2d 96, 99 (2d Cir. 1992). "Because attorney's fees are dependent on the unique facts of each case, the resolution of this issue is committed to the discretion of the district court." Clarke v. Frank, 960 F.2d 1146, 1153 (2d Cir. 1992). In exercising this discretion, the district court should look "to its own familiarity with the

---

[1] Martinez's counsel also speculates that Dyntek's counsel "likely commands an hourly rate far greater than that requested by Martinez's counsel," see Supp. Fees Letter at 2, but she submits no evidence in support of this assertion and we fail to see the relevance to a calculation of the presumptively reasonable fee for her work.

case and its experience with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties." Id. (citing Di Filippo v. Morizio, 759 F.2d 231, 234 (2d Cir. 1985)). When opting to exclude hours not reasonably expended, "the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application." Kirsch v. Fleet St., Ltd., 148 F.3d 149, 173 (2d Cir. 1998) (internal quotation marks and citation omitted).

Where a federal fee-shifting statute is involved, the party seeking an award of attorney's fees must submit contemporaneous time records to justify their hours. See N.Y. State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983); accord Scott v. City of N.Y., 626 F.3d 130, 133 (2d Cir. 2010) ("Carey establishes a strict rule from which attorneys may deviate only in the rarest of cases."). Where sanctions are at issue, however, courts have recognized that the requirement of contemporaneous time records is not absolute. See, e.g., Montesa v. Schwartz, 2015 WL 13173166, at *3 n.4 (S.D.N.Y. Oct. 13, 2015) (citing cases awarding sanctions under Fed. R. Civ. P. 37 without contemporaneous records). Here, the Court is not satisfied that Martinez has shown that the hours claimed are based on contemporaneous time records. Morrison has provided only an invoice, and does not explain how the time entries appearing on that invoice were originally made, why the time entries are unavailable, or how counsel retains time entries. Nonetheless, given the fact that we are awarding attorney's fees as a sanction and not under a fee-shifting statute, we believe we have discretion to award fees notwithstanding the absence of such records. See id.

Here, Morrison seeks compensation for 33.4 hours of work. See Revised Invoice. Given the lengthy resolution of this discovery dispute, lasting from December 2016 to September 2017, and based also on the Court's experience with such disputes, the Court finds that the number of

13

hours sought is reasonable. At an hourly rate of $350 per hour, the sanction to be awarded against Spiess amounts to $11,690.

V. CONCLUSION

For the reasons stated, no sanction will issue against Dyntek. Plaintiff is awarded sanctions against Leah Spiess, Esq. in the amount of $11,690.

SO ORDERED.

Dated: December 28, 2017
New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge

Copy sent to:[1]

Lea Marie Spiess, Esq.
The Law Offices of Lea Spiess
605 West 42nd Street, Suite 35L
New York, NY 10036

---

[1] We note that Spiess is still listed as an attorney of record for defendants and that she is receiving notifications of electronic filings on the docket sheet at two email addresses she has provided. Nontheless, out of an abundance of caution, a copy of this Opinion and Order is being sent to her by first class mail at the address she last provided.

14